# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JORGE MONTES, individually, HILDA MONTES, individually, and JORGE and HILDA MONTES, as parents and next friend of Claudio Montes, a minor, | |
| Plaintiffs, | Case No. 18 cv 8326 |
| vs. | Judge Jorge L. Alonso |
| MCT TRANSPORTATION, LLC, DANIEL BULTHUIS, and COMCAR INDUSTRIES, INC. | Magistrate Judge Maria Valdez |
| Defendants. | |

## PLAINTIFFS' PETITION FOR APPROVAL OF SETTLEMENT INVOLVING A MINOR

Petitioners Jorge Montes and Hilda Montes, individually, and as parents and next friend of Claudio Montes, a minor (collectively, "Montes Plaintiffs" or "Plaintiffs"), through their attorneys, Passen & Powell, pursuant to Local Rule 17.1 and Federal Rule of Civil Procedure 17(c), seek this Court's approval of settlement involving a minor, Claudio Montes. In support of this Petition, Plaintiffs state as follows:

1. This action arises out of a motor vehicle crash on August 19, 2018 caused by the negligence of the defendants, resulting in severe injuries to Jorge Montes, Hilda Montes, and their son, Claudio Montes. *See* **Ex. A**, Third Amended Complaint.

2. Claudio Montes, born on October 27, 2006, is currently 14 years old.

3. Each of the Montes Plaintiffs suffered significant physical injuries caused by this crash, briefly summarized as follows:

   a. Jorge Montes suffered multiple rib fractures, compression fractures of his vertebrae, sternal fracture with mediastinal hematoma, right scapula fracture, right clavicle fracture, and pulmonary contusion to his right lung, all of which fortunately healed without the need for surgery and required limited medical treatment. Still, Jorge's treating orthopedic spine surgeon, Dr. Gary Shapiro, testified that Mr. Montes may require a future 3-level fusion surgery depending on his symptoms. **Ex. B** at 50-52.

   b. Hilda Montes suffered a closed head injury with loss of consciousness and a subdural hematoma, which absorbed during her initial hospitalization and did not require surgery or subsequent medical treatment.

   c. Claudio Montes suffered the most serious physical injuries, namely a severe traumatic brain injury, which has required several brain and reconstructive plastic surgeries, and has left him with permanent brain damage. *See* https://we.tl/t-MGLQo0wCe5, demonstrative exhibits depicting Claudio's injuries. Claudio is now completely reliant on his parents or other caregivers for all activities of daily living, and his condition is likely permanent according to his treating physicians.

4. Jorge and Hilda Montes have also suffered severe "emotional distress" damages relating to the emotional trauma of the crash, its aftermath, and coming to terms with their son's permanent brain damage.

5. The defendants collectively disclosed insurance policy limits for all claims arising out of this motor vehicle crash totaling $25,000,000, summarized as follows:

| Comcar | $1M | 1ST layer |
|---|---|---|
| Chubb | $4M | 2nd layer |
| Gemini | $5M | 3rd layer |
| Evanston | $5M | 4th layer |
| Endurance Specialty | $10M | 5th layer |
| TOTAL | $25M | |

*See* **Ex C**, MCT's Answer to Interrogatory No. 5. As noted in the table, the first $1 million layer of coverage was a self-insured retention ("SIR") to be paid by defendant Comcar Industries, Inc. ("Comcar"). *Id.*

6. Over the course of this litigation, counsel for the Montes Plaintiffs performed a substantial amount of sophisticated legal work to prove and investigate the liability of all responsible parties, and – given the catastrophic injuries to Claudio and additional Claimants – to explore the viability of securing and collecting damages in excess of the policy limits. *See, e.g.,* Summary of legal work on pp. 4-9 of Passen & Powell's Response to Intervening Petition for Quantum Meruit Attorney's Fees.

7. After proving the liability of the defendant truck driver (Bulthuis) and his employer motor carrier, MCT Transportation, LLC ("MCT") through various Illinois State Police and MCT employee depositions, Plaintiffs focused their efforts on exploring whether MCT's parent corporation, Comcar – with annual revenues of approximately $200 million as of April 2019 according to Plaintiffs' corporate asset investigation – also shared liability in this crash. Plaintiffs were able to develop substantial evidence to support Comcar's liability through written and oral discovery, including Rule 30(b)(6) depositions of two corporate representatives (*see* **Ex D**,

response to 30(b)(6) Notice, Topic D), and Plaintiffs successfully amended their complaint to add Comcar as a defendant based on "Alter Ego" and "Agency" theories of liability. *See* Ex. A.

8. The nature and extent of each of the Montes Plaintiffs' injuries were fully explored through deposition testimony from various treating physicians, disclosed expert opinions from Dr. Gary Yarkony (physiatrist) and Robert Johnson (economist), as well as through demonstrative exhibits such as medical animations, illustrations, and "day-in-the-life" videos depicting the catastrophic nature of Claudio's injuries.

9. Once the Montes Plaintiffs were able to prove that their claimed damages exceeded the available insurance policy limits, Plaintiffs fully investigated and explored the viability of collecting an excess judgment against the defendants. Based on the Plaintiffs' private asset investigation, Comcar had substantial assets to satisfy an excess judgment, and counsel for the Montes Plaintiffs and Comcar actively engaged in settlement discussions, including at mediation, with Plaintiffs' demand exceeding the insurance policy limits. That is, until defendants Comcar and MCT filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of Delaware, on May 17, 2020.

10. In light of Comcar and MCT's bankruptcy filing, the Montes Plaintiffs issued the defendants a policy-limits demand to settle this action for all available insurance proceeds. In response, the insurance companies who provided coverage totaling $24 million (coverage in excess of Comcar's $1 million SIR) accepted the demand and agreed to pay their policy limits of $24 million to *all* Claimants to this action. In addition to the Montes Plaintiffs, the additional claimants who suffered damages as a result of this crash and are also entitled to share in the insurance proceeds include John Coia and Deirdre Coia ("Coia Plaintiffs") and Santiago Meza (collectively, "Claimants").

11. The Montes Plaintiffs were able to reach an agreement with all Claimants to divide the $24 million in gross settlement proceeds as follows (*see* **Ex E**):

- $23,843,869.13 to the Montes Plaintiffs
- $150,00 to the Coia Plaintiffs
- $6,130.87 to Santiago Meza

12. As for the additional $1 million SIR, the Montes Plaintiffs discovered that the SIR was secured by a Travelers Insurance Company ("Travelers") surety bond with limits totaling $750,000. The Montes Plaintiffs issued a demand for the full policy limits, and Travelers ultimately agreed to pay the full policy limits of $750,000, to be divided by agreement among all Claimants as follows (**Ex. F**):

- $745,312.50 to the Montes Plaintiffs
- $4,687.50 to Coia Plaintiffs
- $0 to Santiago Meza

13. The Montes Plaintiffs have additionally reserved their right to seek recovery of the remaining $250,000 of Comcar's SIR in the Delaware bankruptcy proceeding via a Proof of Claim.

14. Meanwhile, on July 30, 2020, the United States Bankruptcy Court lifted the automatic stay to allow the Montes Plaintiffs (and other Claimants) to settle this action for the available insurance proceeds. **Ex. G**, Orders lifting bankruptcy stay.

15. In summary, the parties have agreed to settle this matter for a global settlement of $24,750,000, resulting in a gross settlement to the Montes Family of $24,589,181.63, itemized as follows:

| GROSS SETTLEMENT PROCEEDS | ALLOCATION TO CLAIMANTS |
|---|---|
| $24,000,000 from excess insurance companies | |
| | ($150,000 to Coia Plaintiffs) |
| | ($6,130.87 to Santiago Meza) |
| $750,000 from Travelers surety bond | |
| | ($4,687.50 to Coia Plaintiffs) |
| **GROSS SETTLEMENT TO MONTES PLAINTIFFS** | **$24,589,181.63** |

16. The Montes Plaintiffs have expressed their preference to allocate the $24,589,181.63 in Gross Settlement Proceeds as follows:

- $2,000,000 to Jorge Montes
- $2,000,000 to Hilda Montes
- $20,589,181.63 to Claudio Montes (payable to a Trust, as discussed below)

See **Ex. H**, Joint Affidavit of Hilda and Jorge Montes.

17. Pursuant to the terms of the Montes Plaintiffs' attorney-client contingency fee agreement, Passen & Powell seeks approval of attorney's fees of $8,196,393.87, which represents 1/3 of the gross settlement ("any sum obtained or recovered by settlement or suit before the deduction of expenses"), out of which the previously discharged law firm (Cray Huber) will be paid an amount to be determined by this Court based on *quantum meruit*, an issue that is separately briefed. See **Ex. I**, Attorney-Client Agreement. The Montes Plaintiffs support Passen & Powell

receiving attorney's fees consistent with their attorney-client agreement of one-third of the gross settlement amounting to $8,196,393.87, and "believe those fees to be fair and reasonable" in this case. Ex. H, ¶8.

18. Also pursuant to the Attorney-Client Agreement, Passen & Powell seeks approval of reimbursement of expenses totaling $148,163.53. **Ex. J**, itemization of expenses with supporting documentation. Included within this total are the expenses claimed by discharged plaintiff's counsel, Cray Huber, totaling $12,634.54. *See* **Ex. K**, itemization of Cray Huber's expenses.

19. The Court has jurisdiction to approve this petition for attorney's fees and determine discharged counsel's claim to a share of the fees based on *quantum meruit*. *See Patterson v. Burge*, 2008 U.S. Dist. LEXIS 61041 at *21; 2008 WL 4875791 (N.D. Ill. Aug. 4, 2008) (adjudicating this issue and following "Illinois law [which] states that the proper method for determining a discharged (or withdrawn for good cause) attorney's fees and successive attorneys' fees is to determine one party's fee in *quantum meruit* and subtract that amount from the contractual contingency fee, awarding the remainder to the other attorney."); *Cf. Humphrey v. United States*, 787 F. 3d 824, 825-26 (7th Cir. 2015) (declining supplemental jurisdiction to decide a "post-judgment effort to intervene" on this issue because the "federal suit ended when it was dismissed as part of the settlement"). Here, the Court may exercise its jurisdiction to adjudicate the attorney's fees as part of this Petition to Settle the cause of action.

20. The medical expenses incurred by Jorge, Hilda, and Claudio as a result of this crash were paid by Blue Cross Blue Shield of Illinois ("Blue Cross") through Jorge Montes's employer-provided health care benefit plan ("Plan"). Under the terms of the Plan, Blue Cross has a "right to first reimbursement" for all benefits the Plan provided to Jorge, Hilda, or any "covered

dependents" (*i.e.* Claudio) from any damages collected from any third-party for those same expenses, "whether by action at law, settlement, or compromise." *See* **Ex. L,** Blue Cross Plan, p.104 ("Reimbursement Provision").

21.  Counsel for the Montes Plaintiffs have negotiated all contractual rights of reimbursement and medical liens ("Liens") for medical expenses incurred by the Montes Plaintiffs, which has resulted in substantial savings to the Plaintiffs, summarized as follows:

|  | **Total Liens Amount Claimed** | **Negotiated Repayment Amount** | **Savings to Plaintiffs** |
|---|---|---|---|
| Jorge Montes | $71,292.11 | $47,111.66 | $24,180.45 |
| Hilda Montes | $46,613.89 | $31,074.66 | $15,539.22 |
| Claudio Montes | $683,622.67 | $200,361.88 | $483,260.79 |

Attached as **Ex. M** is a full breakdown of all Liens for the Montes Plaintiffs, including the originally claimed amount, negotiated amount, and savings to the Plaintiffs. Notably, this includes a one-third reduction in the Liens asserted by State Farm for payments to the Montes Plaintiffs in "Medical Payments" coverage under their own auto insurance policy.

22. This settlement, if approved by the Court, will result in a net recovery to each of the Montes Plaintiffs as follows:

### HILDA MONTES

| Gross Settlement | (Minus Fees/Expenses/Liens) | Net Settlement to Hilda Montes |
|---|---|---|
| $2,000,000 | | |
| | ($666,666.67) – Attorney's Fees of 1/3 | |
| | ($37,040.88) – Reimbursement of 25%[1] of Expenses | |
| | ($31,074.66) – Repayment of negotiated Liens - *reduced from $46,613.89* | |
| | | **$1,265,217.79 Net Settlement Proceeds to Hilda Montes** |

### JORGE MONTES

| Gross Settlement | (Minus Fees/Expenses/Liens) | Net Settlement to Jorge Montes |
|---|---|---|
| $2,000,000 | | |
| | ($666,666.67) – Attorney's Fees of 1/3 | |
| | ($37,040.88) – Reimbursement of 25% of Expenses | |
| | ($47,111.66) – Repayment of other negotiated Liens - *reduced from $71,292.11* | |
| | | **$1,249,180.79 Net Settlement Proceeds to Jorge Montes** |

---

[1] Given that a large portion of Passen & Powell's case expenses relate to proving the nature and extent of Claudio's brain injury, and the economic and non-economic damages associated with his injury, Plaintiffs recommend allocating 50% of the case expenses to Claudio's claim, and 25% each to Hilda and Jorge's claim.

## **CLAUDIO MONTES**

| Gross Settlement | (Minus Fees/Expenses/Liens) | Net Settlement to Claudio Montes (placed in Trust) |
|---|---|---|
| $20,589,181.63 | | |
| | ($6,863,060.53) – Attorney's Fees of 1/3 | |
| | ($74,081.76) – Reimbursement of 50% of Expenses | |
| | ($200,361.88) Repayment of negotiated Liens - r*educed from $683,622.67* | |
| | | **$13,451,677.46 Net Settlement Proceeds to Claudio Montes, to be placed in a Trust** |

23. A Petition for Guardian of the Estate of Claudio Montes has been filed on behalf of the Montes Plaintiffs in the Circuit Court of Kendall County, Probate Division ("Probate Court"). *See* **Ex. N**. The Montes Plaintiffs have nominated Northern Trust and Josephine Calderon, Senior Trust Officer, to serve as Guardian of the Estate of Claudio Montes. *See* **Ex. O**, Affidavit of Josephine Calderon. Ms. Calderon has substantial experience administering estates for minors with traumatic brain injuries and other catastrophic injuries and is familiar with Claudio's severe brain injury and disability. *Id*.

24. The Probate Court recently entered an Order appointing Northern Trust as Guardian of the estate and/or person of Claudio Montes and continued the matter for presentation of Petition to Approve Settlement to December 28, 2020. **Ex. P**, Order of Probate Court.

25. As discussed by Ms. Calderon, subject to the Probate Court's approval all settlement funds distributable to Claudio Montes will be placed in a Special Needs Trust "to

preserve Claudio's government benefits relating to his disability and special needs without depleting the settlement funds." Ex. O at ¶7.

26. Ms. Calderon is aware that the net settlement proceeds to Claudio's estate will exceed $13.3 million, and it is her opinion (and Northern Trust's opinion) that such amount of money "will be sufficient to ensure Claudio receives the best possible care and quality of life for the remainder of his life." *Id*. at ¶8.

27. The Montes Plaintiffs are also fully aware of the terms of the proposed settlement, and "believe that the settlement achieved in this case is fair and reasonable." Ex H, Joint Affidavit and Attached Letter dated October 20, 2020, ¶4. They further support the Court approving the settlement allocation, attorney's fees, reimbursement of expenses, and resolution of Liens discussed in this Petition. *Id*.

WHEREFORE Passen & Powell, counsel for JORGE MONTES, individually, HILDA MONTES, individually, and JORGE and HILDA MONTES, as parents and next friend of Claudio Montes, a minor, respectfully request the Court enter an Order (*see* draft Order, **Ex. Q**) approving the settlement and disbursement of settlement funds as described herein.

Respectfully submitted,

**PASSEN & POWELL**

BY: s/Matthew A. Passen

Matthew A. Passen (mpassen@passenpowell.com)
Stephen M. Passen (spassen@passenpowell.com)
**PASSEN & POWELL**
1 East Wacker Drive, Suite 1750
Chicago, IL 60601
T: 312-527-4500